UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE SEARCH OF A RESIDENCE IN OAKLAND, CALIFORNIA | Case No. 19-mj-70053-KAW-1 (JD) <br><br> **ORDER RE REVIEW** <br> Re: Dkt. No. 2 |

The United States seeks review of an order by Magistrate Judge Kandis A. Westmore denying an application for a search warrant that would have allowed law enforcement officers to compel the use of a fingerprint or face scan to unlock cell phones and other devices. Dkt. No. 2. Because the government abandoned the original warrant for a new one that omitted the biometric use condition, the request for review is dismissed as moot. The government's request for vacatur of the order, Dkt. No. 6, is also denied.

**BACKGROUND**

The salient facts are straightforward. In January 2019, the United States Attorney's Office for the Northern District of California was investigating an alleged scheme to extort a victim via the Facebook Messenger service. Dkt. No. 1 at 1. The government applied for a warrant to search a residence in Oakland, California, for evidence of the scheme. *Id*. The application sought to seize and search cell phones, laptops and other digital devices found at the residence. To unlock those devices, the government requested authority for law enforcement personnel to "press or swipe the fingers (including thumbs) of any individual" reasonably believed to be the user on the device's fingerprint scanner. Dkt. No. 11, Attachment B ¶ 7. It also sought authorization to obtain access through a face scan. *Id*.

Judge Westmore denied the warrant application. In a thoughtful decision, Judge Westmore found probable cause to search the residence, but concluded that the request to compel the use of biometric features was a step too far under the Fourth and Fifth Amendments. Dkt. No. 1 at 1-2.

The analysis started with recent opinions by the Supreme Court recognizing the centrality of cell phones and digital devices in modern life, and the resulting need to ensure that constitutional safeguards against arbitrary access to personal information by government officials are maintained as technology evolves. *Id.* at 2-4, 7-8; *see also Carpenter v. United States*, 138 S.Ct. 2206, 2213-14, 2018-20 (2018); *Riley v. California*, 573 U.S. 373, 396-99, 134 S.Ct. 2473 (2014). Judge Westmore found that using biometric inputs to unlock devices was the next-gen version of a typed passcode. Since individuals cannot be compelled to provide passcodes to the government, Judge Westmore reasoned the government should also be barred from compelling the use of a fingerprint or face scan to open a device. *See* Dkt. No. 1 at 5-6.

The government did not seek an immediate review of the order denying the warrant, nor did it ask for a stay of decision or pursue any other course to preserve the original application. Instead, the government abandoned the application in favor of a new one that dropped the request for compelled use of biometric features. Dkt. No. 2 at 8. Judge Westmore promptly issued a warrant on the basis of the new application, and that warrant was executed a few days later. *Id*.

Approximately two weeks after the denial order was filed, the government submitted a motion for review by this Court. Dkt. No. 2. The government challenged only the holding that individuals cannot be compelled to use their biometric features to allow the government to unlock personal digital devices. *Id.* at 4-5.

Because the record showed that the government had obtained and executed a warrant based on a new application, in lieu of the one that had been denied, the Court asked at oral argument whether the motion was moot. *See* Dkt. No. 5. The Court cited *United States v. Microsoft*, 138 S.Ct. 1186, 1188 (2018), where the Supreme Court held that a challenge to a warrant for electronic records became moot when the original warrant was replaced *in toto* with a new one, as happened here, albeit for different reasons. The Court invited the government to brief the question, and the issue of what the disposition should be if mootness applied. The government filed a response contending that the motion was proper under the exception to mootness for conduct capable of repetition yet evading review. Dkt. No. 6 at 1-3. The government also argued that if the motion were moot, the Court should nevertheless vacate the order as a matter of equity. *Id.* at 3-4.

2

**DISCUSSION**

**I.     THE MOTION IS MOOT**

This case raises a number of highly engaging issues, but the one that is dispositive is mootness. Article III limits the jurisdiction of the federal courts to actual cases or controversies. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64, 117 S.Ct. 1055 (1997). The Court has no jurisdiction to hear a dispute that is not live and capable of affecting a litigant's rights. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477, 110 S.Ct. 1249 (1990) (citing *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402 (1971)). Consequently, ensuring that there is an active case here is the threshold inquiry.

The record establishes that there is not a live dispute before the Court. When the government opted to abandon the original warrant, and replace it with a new one, the original warrant application was rendered moot. *See Microsoft Corp.*, 138 S.Ct. at 1188 (2018); *Koppers Indus. v. EPA*, 902 F.2d 756, 758 (9th Cir. 1990); *In re Bunker Ltd. Partnership*, 820 F.2d 308, 310-11 (9th Cir. 1987). There is "no 'live controversy'" because "a reversal of the denial" of the original warrant application "will not provide [the government] with actual, affirmative relief." *Koppers*, 902 F.2d at 758.

The government does not meaningfully contest this conclusion, but instead argues that jurisdiction may be found under an exception for disputes that are "capable of repetition, yet evading review." *See, e.g.*, Dkt. No. 6 at 1-3; *see also Koppers*, 902 F.2d at 758-59 (citing *Southern Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279 (1911)). A dispute is capable of repetition if there is a reasonable expectation the complaining party "'would be subjected to the same action again'; it is likely to evade review if 'the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration.'" *Unabom Trial Media Coal. v. United States District Court*, 183 F.3d 949, 950 (9th Cir. 1999) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347 (1975) (per curiam)). While the government appears to regard the exception as readily available, it applies "only in 'exceptional situations,' and only when both factors are 'simultaneously present.'" *Id.* (quoting *Spencer v. Kemma*, 523 U.S. 1, 17, 118 S.Ct. 978 (1998)).

1 Nothing in the record indicates that the situation here is exceptional in any way, or that either factor has been satisfied. The government says that it has demonstrated the capable-of-repetition factor because Judge Westmore "has made clear" that she will not approve a warrant application with a compelled biometric provision. Dkt. No. 6 at 2. The point is not well-taken. To start, Judge Westmore is far from the only magistrate judge in our district who reviews warrant applications. There is more than a fair likelihood that the government will have occasion to raise the biometric issue in an application before another judge, who will not be bound in any way by Judge Westmore's order. The government also ignores the critical fact that its inability to obtain review was a self-inflicted consequence. The government made no effort to stand on the original warrant or preserve the issue for consideration by this Court. Our circuit has established that a party may not profit from the mootness exception when its own conduct has prevented review of the challenged decision. *See Koppers*, 902 F.2d at 759; *In re Bunker Ltd. Partnership*, 820 F.2d at 311 (9th Cir. 1987).

The government is equally unsuccessful in demonstrating that the order raises an issue "so intrinsically limited in duration" that it would necessarily escape review. *Unabom*, 183 F.3d at 952. The government seeks to create a sense of urgency by saying that the availability of biometric unlocking is lost if not done within 48 hours of the last use. *See* Dkt. No. 2 at 6. That is a red herring. The government had an ample opportunity to obtain a review of Judge Westmore's order before serving the warrant and triggering the 48-hour clock on seized devices. That is so because our district continually maintains an Article III judge on duty for situations just like this. Had it chosen to stand on the original application, and not replace it with a new one, it is very likely the government could have obtained a review of the order in the space of a week or two, or even faster. Nothing in the record indicates that this would have been a crippling delay for the investigation in this case.

The government has not established that the "capable of repetition, yet evading review" exception applies to permit consideration of the original warrant. Its reliance on an order from the District of Idaho does not change this conclusion. *See* Dkt. No. 8. In *In re Search of a White Google Pixel 3 XL Cellphone*, 398 F. Supp. 3d 785 (D. Idaho 2019), the government obtained an

4

initial warrant to seize digital devices, and then applied for an additional and subsequent warrant to compel the user to unlock them with a fingerprint. *Id*. at 787-88. A magistrate judge denied the additional application after the 48-hour window for biometric access had closed. *Id*. at 788. The government obtained review of the denial by a district judge, who determined that the mootness exception applied in those circumstances. *Id*. at 788-89.

That is an entirely different situation from this case. There, the government stood on the warrant that had been denied, and did not abandon it for a new one. Here, the government jettisoned the original warrant for one that omitted the challenged language. The Idaho decision is consequently of limited value to the question of mootness at hand.

## II. VACATUR IS NOT APPROPRIATE

As a fallback position, the government requests vacatur of Judge Westmore's order. Dkt. No. 2 at 5. In effect, the government proposes to erase what it deems to be an adverse decision, even though the matter is moot and the merits cannot be reviewed.

That is not an appropriate outcome. The "touchstone of vacatur is equity." *Dilley v. Gunn*, 64 F.3d 1365, 1370 (9th Cir. 1995) (citing *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 115 S.Ct. 386 (1994)). When an aggrieved party is denied an opportunity for review of a decision by factors outside of its control, equity advises that the decision should be set aside so that the party is not unfairly prejudiced. *See United States v. Munsingwear*, 340 U.S. 36, 40, 71 S.Ct. 104 (1950). But this guidance, which is "neither statutorily nor constitutionally required," does not apply "'when the appellant has by his own act caused the dismissal of the appeal.'" *Dilley*, 64 F.3d at 1370 (quoting *Ringsby Truck Lines, Inc. v. W. Conference of Teamsters*, 686 F.2d 720, 722 (9th Cir. 1982)). "'The denial of vacatur [in such a case] is merely one application of the principle that '[a] suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks.'" *Id*. (quoting *U.S. Bancorp*, 513 U.S. at 25, 115 S.Ct. at 392 (alterations in original)).

To put a finer point on it, "a dissatisfied litigant should not be allowed to destroy the collateral consequences of an adverse judgment by destroying his own right to appeal." *Allard v. DeLorean*, 884 F.2d 464, 467 (9th Cir. 1989). That fits to perfection the government's position

5

here. Review of the order has been mooted by the government's own hand, and so equity does not sound in favor of vacatur.

This is all the more true when the possible consequences and hardships from granting or denying vacatur are weighed, along with "'the competing values of finality of judgment and right to relitigation of unreviewed disputes.'" *Dilley*, 64 F.3d at 1371 (quoting *Ringsby*, 686 F.2d at 722). Granting vacatur in this case would run counter to the established principle that "[j]udicial precedents are presumptively correct and valuable to the legal community as a whole," and "should stand unless a court concludes that the public interest would be served by a vacatur." *U.S. Bancorp*, 513 U.S. at 26, 115 S.Ct. at 392 (internal quotation marks omitted). On that score, the government says that "no other litigant will be harmed by vacatur," Dkt. No. 6 at 4, but that does not speak to the public interest as a whole. The public interest in the fair and orderly administration of justice would be poorly served by allowing the government to erase an unfavorable ruling through "the secondary remedy of vacatur." *U.S. Bancorp*, 513 U.S. at 27, 115 S.Ct. at 392.

## CONCLUSION

The government mooted consideration of the order denying the original warrant, and so "is in no position to complain that [its] right of review of an adverse lower court judgment has been lost." *Ringsby*, 686 F.2d at 722. The motion for review is dismissed as moot, and the request for vacatur is denied.

**IT IS SO ORDERED.**

Dated: December 10, 2019

JAMES DONATO
United States District Judge